UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THATH SIN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| v. ) | **10-40226-FDS** |
| ) | |
| MASSACHUSETTS DEPARTMENT OF ) | |
| CORRECTION and JAMES J. SABA, ) | |
| CURTIS A. DEVENEAU, SANDRA ) | |
| RICHARD, and MICHAEL DOIRON, in ) | |
| their individual and official capacities, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is an action under 42 U.S.C. § 1983. It arises from a prisoner's dismissal from an institutional employment program. Plaintiff Thath Sin, a male of Cambodian origin, is a state prisoner held in custody at the North Central Correctional Institution ("NCCI") in Gardner, Massachusetts.

Sin was employed by NCCI as a gardener charged with maintaining flower beds on the prison grounds and with distributing seeds to other inmates who participated in the prison's recreational gardening program. On April 9, 2010, he was terminated from his position after a prison officer found seeds in his cell, in violation of prison rules. According to Sin, the officer had previously found seeds in the cell of another prisoner, a white male who also worked as a gardener, but no action had been taken with respect to that man's employment.

After exhausting his administrative remedies through the prison grievance system, Sin brought this action against the Massachusetts Department of Correction ("DOC") and various DOC officers. He alleges violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment and of the Eighth Amendment prohibition against cruel and unusual punishment.

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim or, in the alternative, for summary judgment. Plaintiff has filed two motions to strike and a motion to compel discovery. For the following reasons, the motion to dismiss will be treated as a motion for judgment on the pleadings and will be granted in part and denied in part, and the motions to strike and to compel discovery will be denied as moot.

## I.     Background

The following facts are stated as alleged in the pleadings, with all disputes and inferences construed in plaintiff's favor.[1]

Plaintiff Thath Sin is a prisoner in custody of the Massachusetts Department of Correction at the North Central Correctional Institution in Gardner, Massachusetts. (Compl. ¶ 3). He is an Asian male of Cambodian origin. (*Id.* ¶ 15). At the time of the event that gave rise to this action, Sin was held on the first floor of Thompson Hall at NCCI. (*Id.* ¶ 11).

At that time, Sin was employed by the prison as a gardener. His job was to maintain flower beds under the supervision of defendant Michael Doiron, a recreation officer. (*Id.* ¶ 4).[2]

---

[1] To the extent that it is consistent with plaintiff's allegations, the Court also draws on information provided in the exhibits to defendants' motion to dismiss for purposes of providing background.

[2] The complaint alleges that Sin received his position as a gardener on July 19, 2010. (Compl. ¶ 10). Defendants, however, assert that he was employed as of July 21, 2010. (Answer ¶ 10). Both pleadings appear to be in error, as the events relating to his employment that are the subject of this action are alleged to have occurred

The prison also operated a recreational gardening program, under which selected inmates were allowed to plant and cultivate vegetables for personal consumption; Sin's work duties included distribution of seeds for that program. (*Id.*). To allow him to complete his duties, Sin was granted access to areas of the institution where other prisoners were not allowed and was given a security clearance to use shovels, rakes, and other tools. (Doiron Aff. ¶¶ 19, 22). While on duty, Sin wore a green vest that indicated to prison guards that he was authorized to access parts of the grounds that were otherwise off-limits to prisoners. (*Id.* ¶ 20).

On the morning of April 8, 2010, NCCI security officers conducted a routine search of Thompson Hall. (*Id.* ¶ 11). During the search, an officer found and confiscated garden seeds in Sin's cell, in a locker assigned for his use. (*Id.*; Answer ¶ 11). Rules that govern the gardening program provide that "[s]torage or growing of seeds, plants, etc., in an inmate room is prohibited and will be considered contraband." (Doiron Aff. Ex. A). The confiscated seeds were turned over to Doiron, who spoke with Sin in his cell about the confiscation the next day. (*Id.* ¶ 11). At that meeting, Doiron allegedly said, "The [investigating officer] shook you down and found seeds in your cell. Now I have to fire you." (*Id.* ¶ 12). He then asked Sin to turn over his green vest. (*Id.*).

Sin alleges that several weeks before this incident, the same security officer had found seeds stored in the cell of another inmate, Brian Larsons. (*Id.* ¶ 13). Larsons is a white male. (*Id.* ¶ 15). Larsons, like Sin, participated in the recreational garden program and was employed as

---

earlier, in April 2010. (Compl. ¶¶ 11-14). In an affidavit, defendant Doiron asserts that Sin received the job beginning on July 30, 2009, a date that would be consistent with his alleged dismissal during the following year. (Doiron Aff. ¶18). In any event, because it is undisputed that Sin was working as a gardener when the events at issue took place in April 2010, the Court does not need to resolve these discrepancies.

3

a gardener. (*Id.*). When seeds were found in Larsons's cell, no adverse action was taken against him with respect to either his employment as a gardener or his participation in the gardening program. (*Id.* ¶¶ 13-15).

On April 12, Sin approached Doiron to request an alternate form of discipline so that he could retain his gardening job. (*Id.* ¶ 14). Doiron denied the request. (*Id.*). Sin then asked why he had been fired, but Larsons had not. (*Id.*). Doiron explained that the seeds in Larsons's cell had been found during a "regular shakedown" whereas the seeds in Sin's cell had been found during a "major shakedown." (*Id.*). Sin indicated his suspicion that the discrepancy in disciplinary actions resulted from racial prejudice on the part of Doiron. (*Id.*). Doiron did not respond to this accusation. (*Id.*).

Later that day, Sin spoke with the security officer who had found the seeds in both his and Larsons' cells. (*Id.* ¶17). During their conversation, the officer stated that "it doesn't seem right" that Sin had been fired from his gardening position while Larsons had not. (*Id.* ¶ 18). Sin alleges that to his knowledge, no inmate at NCCI has ever lost his institutional employment because seeds were found in his cell in violation of garden-program rules. (*Id.* ¶ 19).

On April 15, Sin submitted an informal complaint to Doiron regarding the events surrounding his dismissal, pursuant to DOC regulations governing the prisoner-grievance process. (*Id.* ¶ 20). On April 21, the complaint was denied by defendant Curtis Deveneau, a lieutenant with the DOC who was assigned to NCCI. (*Id.* ¶¶ 6, 20).

The same day, Sin filed a formal grievance form. (*Id.* ¶ 21). The grievance was later denied by defendant Sandra Richard, a DOC correctional officer assigned to NCCI. (*Id.* ¶¶ 7, 21). On May 10, Sin appealed the denial to defendant James Saba, the superintendent of NCCI,

but on June 2, the appeal was also denied. (*Id.* ¶¶ 5, 22).

Sin initiated this action under 42 U.S.C. § 1983 on November 12, 2010. The complaint alleges that Sin's dismissal from his job as a flower-bed gardener violated his rights to equal protection and procedural due process under the Fourteenth Amendment and that it constituted cruel and unusual punishment under the Eighth Amendment.

Defendants have filed a motion to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment. Plaintiff has filed motions to strike defendants' motion to dismiss and motion to stay discovery and also has moved to compel discovery.

## II.     Procedural Posture

Plaintiff's motion to strike the motion to dismiss raises a preliminary matter regarding the procedural posture of this case. He contends that the motion to dismiss is untimely because defendants have already filed an answer and that conversion to summary judgment is inappropriate because he has not had an adequate opportunity for discovery.

Defendants filed an answer to the complaint on April 14, 2011. On September 16, 2011, after receiving requests for interrogatories from plaintiff, defendants filed a motion to stay discovery to allow time for them to file a motion to dismiss or, in the alternative, for summary judgment. As grounds for their request for the stay, defendants asserted that resolution of their dispositive motion would promote judicial efficiency by obviating or substantially narrowing the scope of discovery necessary in the action. On October 13, the Court granted the stay of discovery.

Fed. R. Civ. P. 12(b) states that "[a] motion asserting [failure to state a claim] must be made before pleading if a responsive pleading is allowed." Thus, defendants' motion to dismiss is

untimely because it was made after their responsive pleading was filed. However, Fed. R. Civ. P. 12(c) allows for judgment on the pleading upon a motion that is made "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Judgment on the pleadings at this stage is both timely and would promote the expedient resolution of this action by obviating discovery or narrowing its scope. Accordingly, although defendants have styled their filing as a motion to dismiss under Rule 12(b)(6), the Court will treat the motion as one for judgment on the pleadings under Rule 12(c). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (holding that a motion to dismiss that is filed after the close of pleadings should be construed as a motion for judgment on the pleadings).

Accordingly, and defendants' motion to dismiss will be construed as a motion for judgment on the pleadings, and plaintiff's motion to strike that motion will be denied as moot.

### III.    Standard of Review

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a defendant's motion for judgment on the pleadings, a plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). The court will therefore grant defendants' motion for judgment on the pleadings if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III. Analysis

#### A. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that similarly situated persons are entitled to receive similar treatment at the hands of government actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege that he "was treated differently from 'others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008) (quoting *Aponte-Torres*, 445 F.3d at 57).

Two persons or entities are similarly situated if "a prudent person, looking objectively at the incidents [complained of], would think them roughly equivalent and the protagonists similarly situated . . . in all relevant respects." *Clark*, 514 F.3d at 114 (quoting *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir.2001)). "Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words,

apples should be compared to apples." *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 34 (1st Cir. 2008) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)).

Here, plaintiff alleges that defendant Doiron fired him from his gardening job for stealing seeds and that another prisoner with the same job was not fired or otherwise punished for substantially the same misconduct. Those facts, if true, would establish that plaintiff was treated differently than a similarly situated inmate.[3] Moreover, plaintiff asserts that Doiron was motivated by racial bias in deciding to punish plaintiff more severely than Larsons for the same infraction. (Compl. ¶ 15). Such a motive, if proved, would be improper.

Defendants contend that this claim must nonetheless be dismissed as to defendant Saba, who, as superintendent of NCCI, is Doiron's supervisor, because plaintiff cannot meet the high standard for proving supervisory liability in Section 1983 cases. *See Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st. Cir. 2005) (affirming dismissal of discrimination claims as against a supervisor because plaintiff alleged only that the supervisor would act in a discriminatory manner in the future). However, it is not plaintiff's burden to *prove* anything at this stage. It is true that in a Section 1983 case, "[a] supervisor may be found liable only on the basis of his own acts or omissions." *Id.* However, because plaintiff has alleged actual involvement by defendant Saba (through the grievance appeal process), he has stated a claim for supervisory liability. (Compl. ¶ 22). At this stage, because the Court cannot say that "it is clear that no relief could be granted

---

[3] In an affidavit submitted with defendants' motion to dismiss, defendant Doiron avers that an aspect of plaintiff's conduct that distinguishes his situation is that seeds were found in his cell on two separate occasions. (Doiron Aff. ¶ 23). If this fact is true, and if Larsons was caught on only a single occasion, these circumstances would distinguish plaintiff and preclude his equal protection claim. However, this Court may not rely on Doiron's assertion because on a motion for judgment on the pleadings, a Court may not consider documents outside the pleadings unless it converts the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d).

under any set of facts that could be proved consistent with the allegations," *Cepero-Rivera*, 414 F.3d at 129, plaintiff may assert his claims against defendants Saba.

Defendants also contend that the equal protection claim must be dismissed as against defendants Saba and Richard because the complaint does not allege sufficient involvement by them in the discriminatory conduct. However, as noted with respect to Saba, plaintiff does allege involvement through the prisoner grievance process. (Compl. ¶¶ 22, 23). That is sufficient at this stage of the litigation.[4]

Accordingly, the motion to dismiss will be denied as to plaintiff's equal protection claim.

B.     **Due Process Claim**

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." However, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *see also Aponte-Torres*, 445 F.3d at 56. Analysis of a procedural due process claim thus proceeds in two steps: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011).

Prisoners may claim the protections of the due process to the same extent as other citizens; thus, a state may vest prisoners with protected property or liberty interests by operation

---

[4] Defendants also point out that the a state official acting in his official capacity cannot be sued for damages in a Section 1983 action because the Eleventh Amendment bars such suits against the states and their agencies. *See Alabama v. Pugh*, 438 U.S. 781, 781-82 (1978); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002). Although this proposition of law is accurate, it does not warrant dismissal with respect to any of the defendants because the complaint both seeks injunctive relief and asserts damages claims against the individual defendants in their individual capacity.

of its statutes and regulations. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). For example, a state that provides for the accumulation of good time credits by prisoners creates a liberty interest and must afford due process before depriving a prisoner of those credits as a sanction for misconduct. *Wolff*, 418 U.S. at 557. However, the negative implication of this principle, as applied in this context, is that "unless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs." *Dupont v. Saunders*, 800 F.2d 8, 10 (1st Cir. 1986).

Here, plaintiff's claim is precluded at the first step in the due-process analysis because Massachusetts law grants prisoners no liberty or property interest in institutional employment. The statute that authorizes prison work programs contains no express entitlement to such employment. Mass. Gen. Laws ch. 127, § 48; *see also Commonwealth v. Langton*, 25 Mass. App. Ct. 947, 947 (1988) (noting that the statute was revised by the Legislature in 1972 to make eligibility for inmate work assignments discretionary).[5] The Supreme Judicial Court has explicitly

---

[5] The text of the statute provides:

> The commissioner shall establish and maintain education, training and employment programs for persons committed to the custody of the department . . . . Such programs shall include opportunities for academic education, vocational education, vocational training, other related prevocational programs and employment, and may be made available within correctional facilities or . . . at other places approved by the commissioner or administrator. In determining which employment programs to establish and maintain under the authority of this section, the commissioner or administrator shall take into account, first, the training value of the program, second, the job market and employment conditions in the community and third, in the case of programs to be carried out within a correctional facility, the types of goods and services required by the commonwealth and its subdivisions.
>
> The commissioner shall make and promulgate rules and regulations governing programs established under this section which shall include provisions for hours, conditions of employment, wage rates for employment program participants, incentive payments for education and training program participants, and deductions from said wages . . . .

Mass. Gen. Laws ch. 127, § 48.

held, in the context of an equal protection claim, that a prisoner "does not have an unqualified right to work" under the statute. *Jackson v. Hogan*, 388 Mass. 376, 379 (1983). Moreover, the regulations implementing the prison-work statute disclaim the establishment of any entitlement to prison employment. *See* 103 Mass. Code Regs. 455.02 ("[Regulations] issued pursuant to [Mass. Gen. Laws ch. 127, § 48 are] not intended to confer any procedural or substantive rights . . . not otherwise granted by state or federal law.").

Courts in this district have accordingly held that decisions by prison officials to terminate inmates' employment do not implicate the procedural requirements of the due process clause. *See Jackson v. Russo*, 495 F. Supp. 2d 225, 230 (D. Mass. 2007) (holding that in Massachusetts "no law or regulation . . . confers a protected property or liberty interest on an inmate in any particular prison job"); *Childers v. Maloney*, 247 F. Supp. 2d 32, 37 (D. Mass. 2003) (expressly holding that a prisoner has no liberty interest in a particular job assignment, even if that job may lead to good-time sentence reductions); *Shabazz v. Cole*, 69 F. Supp. 2d 177, 202 (D. Mass. 1999) (holding that prisoner lacked any federal due process claim with respect to the loss of employment in the prison library).

Likewise, plaintiff in this action fails to state a claim under the Due Process Clause because Massachusetts law affords him no constitutionally protected interest in institutional employment as a gardener. Because the absence of a protectable interest precludes his claim at the first step of the due-process analysis, there is no need to reach the second part of that inquiry.

### C. Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." This prohibition clearly encompasses "inherently barbaric" punishments, *Graham v. Florida*, 130 S. Ct.

2011, 2021 (2010), and conditions of confinement that impose "unnecessary and wanton infliction of pain," *Estelle v.Gamble*, 429 U.S. 97, 102-03 (1976). What is "cruel and unusual" within the meaning of the amendment is determined according to norms that "currently prevail," *Atkins v. Virginia*, 536 U.S. 304, 311 (2002), and includes "deliberate indifference" to prisoners' safety or medical needs, *Minneci v. Pollard*, 132 S. Ct. 617, 619, 625 (2012) (citing *Carlson v. Green*, 446 U.S. 14, 16 (1980) and *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Also embodied in amendment's prohibition is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Graham*, 130 S. Ct. at 2021.[6]

Here, plaintiff appears to assert that the disciplinary measures taken against him amount to an unconstitutional condition of confinement. To support such a claim, a plaintiff must prove (1) that he suffered a deprivation as a result of confinement that is, "objectively, sufficiently serious" and (2) that the deprivation resulted from conduct by prison officials who possessed a "sufficiently culpable state of mind." *Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002). Plaintiff's allegations that defendants unfairly disciplined him and terminated his institutional employment fail to satisfy the first of these requirements. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding that a deprivation as a result of conditions of confinement is sufficiently serious only if it "result[s] in the denial of 'the minimal civilized measure of life's necessities'") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). *See also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim."). Plaintiff's alleged deprivations simply are not serious enough to constitute a violation of the

---

[6] This proportionality requirement is limited and generally entails only narrow review of the length of term-of-years sentences and certain categorical restrictions on the death penalty. *Graham*, 130 S. Ct. at 2021.

Eighth Amendment.

### IV.     Motion to Compel Discovery

Plaintiff's motion to compel discovery was filed while the stay of discovery that this Court previously ordered remained in effect. Because the stay was ordered pending resolution of the motion to dismiss, discovery will proceed following the resolution of that motion in this order. Absent a showing that defendants have failed to comply with their discovery obligations, the motion to compel discovery is therefore unnecessary and will be denied as moot.

### V.     Motion to Strike Motion to Stay Discovery

Plaintiff's motion to strike defendants' motion to stay discovery was filed after that motion had been granted. In any event, because the stay was in effect only pending the motion to dismiss and will be dissolved by this order, plaintiff's motion to strike will be denied as moot.

### VI.    Conclusion

For the foregoing reasons,

1. Defendants' motion to dismiss is GRANTED as to the Due Process and Eighth Amendment claims and DENIED as to the Equal Protection claims;

2. Plaintiff's motion to strike defendants' motion to dismiss is DENIED as moot;

3. Plaintiff's motion to compel discovery is DENIED as moot; and

4. Plaintiff's motion to strike defendants' motion to stay discovery is DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 2, 2012